No. 21-10075

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JOAQUIN HERRERA,

*Defendant-Appellant.*

_____

A Direct Appeal of a Criminal Case
From the United States District Court
for the Northern District of Florida, Panama City Division

_____

## INITIAL BRIEF OF APPELLANT

RANDOLPH P. MURRELL
Federal Public Defender

RICHARD M. SUMMA
Assistant Federal Public Defender
Florida Bar No. 890588
227 N. Bronough Street, Ste. 4200
Tallahassee, Florida 32301
Telephone: (850) 942-8818
FAX: (850) 942-8809
Attorney for Appellant

No. 21-10075

United States v. Joaquin Herrera

**CERTIFICATE OF INTERESTED PERSONS**

As required by Federal Rule of Procedure 26.1 and 11th Cir. Rule 26.1-2, the following persons have an interest in the outcome of this case:

Coody, Jason: Acting U.S. Attorney

Davies, Robert G.: Assistant U.S. Attorney

Frank, Michael J.: Magistrate Judge

Halstrom, Timothy: Assistant Federal Public Defender

Herrera, Joaquin: Defendant/Appellant

Laird, Laura: U.S. Probation Officer

Murrell, Randolph: Federal Public Defender

Spaven, Michelle: Assistant U.S. Attorney

Stampelos, Charles A.: U.S. Magistrate Judge

Summa, Richard M.: Assistant Federal Public Defender

Wetherell, Kent: U.S. District Court Judge

C 1 of 1

## STATEMENT REGARDING ORAL ARGUMENT

Appellant leaves oral argument to the discretion of the Court.

**TABLE OF CONTENTS**

<u>Contents</u>                                                                                                    <u>Page</u>

STATEMENT REGARDING ORAL ARGUMENT ................................................i

STATEMENT OF JURISDICTION.........................................................................1

STATEMENT OF THE ISSUE..............................................................................2

STATEMENT OF THE CASE................................................................................3

    (i)    <u>Nature of the Case and Statement of Incarceration</u>...................................3

    (ii)   <u>Course of Proceedings and Dispositions in the Court Below</u> ..................3

    (iii)  <u>Statement of the Facts</u>............................................................................5

    (iv)  <u>Standard of Review</u> ...............................................................................14

SUMMARY OF THE ARGUMENT .....................................................................16

ARGUMENT .......................................................................................................18

            Whether the sentence imposed by the district court—100 years in prison followed by 10 years of supervised release—was substantively reasonable? .............................................18

CONCLUSION....................................................................................................26

CERTIFICATE OF COMPLIANCE.......................................................................27

CERTIFICATE OF SERVICE ..............................................................................28

# TABLE OF CITATIONS

**Cases**                                                                                      **Page**

*Gall v. United States*, 552 U.S. 38 (2007)..........................................................19,20

*Holguin-Hernandez v. United States*, 140 S. Ct. 762 (2020) .................................20

*Rita v. United States*, 551 U.S. 338 (2007)..............................................................19

*United States v. Brierton*, 165 F.3d 1133 (7th Cir. 1999) .......................................19

*United States v. Castillo*, 427 F. App'x 748 (11th Cir. 2011) .................................13

*United States v. Duperval*, 777 F.3d 1324 (11th Cir. 2015)....................... 14, 18,19

*United States v. Goldman*, 953 F.3d 1213 (11th Cir. 2020) ...................................20

*United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010) (en banc).................... 19, 20

*United States v. Kirby*, 938 F.3d 1254 (11th Cir. 2019)................................. 14, 18

*United States v. Lattimore,* 296 F. App'x 890 (11th Cir. 2008)..............................19

*United States v. Matchett*, 802 F.3d 1185 (11th Cir. 2015), *cert. denied*,
   137 S. Ct. 1344 (2017)................................................................................. 19,20

*United States v. McBride*, 511 F.3d 1293  (11th Cir. 2007)...................................15

*United States v. Pugh*, 515 F.3d 1179 (11th Cir. 2008)..........................................14

*United States v. Sarras*, 575 F.3d 1191 (11th Cir. 2009); ......................................13

*United States v. Stewart*, 704 F. App'x 855 (11th Cir. 2017) .................................13

*United States v. Talley*, 431 F.3d 784 (11th Cir. 2005)...........................................19

*United States v. Tichenor*, 683 F.3d 358 (7th Cir.2012)..........................................19

iii

**Statutes**

18 U.S.C. § 2251(a) ..........................................................................3, 4

18 U.S.C. § 2251 (e) ..........................................................................3, 4

18 U.S.C. § 2252A(a)(5)(B) .................................................................4

18 U.S.C. § 2252A(b)(2) ......................................................................4

18 U.S.C. § 2256(8)(A) ........................................................................4

18 U.S.C. § 3231 ....................................................................................1

18 U.S.C. § 3553(a) ................................................................ in passim

28 U.S.C. § 1291 ....................................................................................1

**Other Authorities**

USSG § 2G2.1(a) ..................................................................................6

USSG § 2G2.2(a)(1) ..............................................................................8

USSG § 2G2.2(b)(2) ..............................................................................8

USSG § 2G2.2(b)(4)(A) .........................................................................8

USSG § 2G2.2(b)(6) ..............................................................................8

USSG § 2G2.2(b)(7) ..............................................................................8

USSG § 3D1.2(d) ...................................................................................6

USSG § 4B1.5(b)(1) ..............................................................................8

iv

## STATEMENT OF JURISDICTION

The United States District Court, Northern District of Florida, Pensacola Division, had jurisdiction pursuant to 18 U.S.C. § 3231.  Following entry of a guilty plea (ECF 33; ECF 61—pp37-38), the district court orally imposed judgment and sentence on December 17, 2020 (ECF 57—p26-27), and entered written judgment and sentence on December 29, 2020. (ECF 47).  Appellant filed a notice of appeal on January 7, 2021. (ECF 49).  This appeal is from a final judgment or order that disposes of all parties' claims.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291, which provides that the court of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States except where a direct review may be taken to the Supreme Court.

1

## STATEMENT OF THE ISSUE

Whether the sentence imposed by the district court—100 years in prison followed by 10 years of supervised release—was substantively reasonable?

## STATEMENT OF THE CASE

(i)    <u>Nature of the Case and Statement of Incarceration</u>

This is the direct appeal of a felony judgment and sentence of imprisonment. Appellant is incarcerated.

(ii)    <u>Course of Proceedings and Dispositions in the Court Below</u>

Appellant, Joaquin Herrera, was charged with five felony offenses.  **Count I:** On or about **April 3**, 2019, Herrera did knowingly use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct (produced with materials shipped in interstate commerce), in violation of 18 U.S.C. §§ 2251(a) and 2251 (e). (ECF 1).

**Count II:**  On or about **April 5**, 2019, Herrera did  knowingly use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct (produced with materials shipped in interstate commerce), in violation of 18 U.S.C. §§ 2251(a) and 2251 (e). (ECF 1).

**Count III:**  On or about **April 22**, 2019, Herrera did knowingly use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct (produced with materials

3

shipped in interstate commerce), in violation of 18 U.S.C. §§ 2251(a) and 2251 (e). (ECF 1).

**Count IV:** On or about **April 28**, 2019, Herrera did knowingly use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct (produced with materials shipped in interstate commerce), in violation of 18 U.S.C. §§ 2251(a) and 2251 (e). (ECF 1),

**Count V:** On or about May 5, 2019, Herrera did knowingly possess material containing child pornography, as defined in 18 U.S.C. § 2256(8)(A), that involved a prepubescent minor and a minor who had not attained 12 years of age, that had been shipped and transported using any means and facility of interstate commerce, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). (ECF 1).

Herrera consented to enter a plea of guilty before a Magistrate Judge. (ECF 28). The Magistrate Judge recommended acceptance of the guilty plea. (ECF 32). The district court accepted the plea. (ECF 33).

The district court sentenced Herrera to a total effective term of 100 years in prison followed by ten years of supervised release. (ECF 47). This includes consecutive terms of 360 months on Counts I, II and IV, a consecutive term of 120 months on Count V, and a concurrent term of 360 months on Count III. (ECF 47—

4

p2).  The district court also imposed 10 years of supervised release on each count, to be served concurrently. (ECF 47—p3).

(iii)   <u>Statement of the Facts</u>

Herrera entered into a written plea agreement. (ECF 29).  He pled guilty to all five counts.  The agreement notes the mandatory minimum and maximum sentences for all counts.  He waived all constitutional rights attendant to trial, and the government agreed not to file any other charges arising out of the same transactions or occurrences to which he pled guilty. (ECF 29—p4).  The parties agreed that sentencing was at the discretion of the district court, taking into account the Sentencing Guidelines and the statutory maximum and minimum sentences. (ECF 29—p5).  Herrera acknowledged his obligations under the Sex Offender Registration and Notification Act, and agreed to entry of a restitution order of $3,000 for each victim identified in images contained on his electronic devices. (ECF 29—pp5,6).  The parties reserved the right to appeal any sentence imposed. (ECF 29—p7).  The district court accepted the plea and ordered the preparation of a Presentence Investigation Report (PSR). (ECF 33; ECF 61—p38).

The PSR describes the offense conduct in greater detail.  The Count I video shows the exposed vagina of six-year old N.R.  N.R. is the daughter of Herrera's

girlfriend.  Herrera is also seen wiping N.R.'s vagina with a rag and masturbating. (PSR ¶¶ 15, 20).

The evidence in Count II included video of Herrera rubbing his penis on the vagina of eleven-year-old A.H., his daughter. (PSR ¶¶ 15, 21).

The evidence in Count III includes images of Herrera fondling the vagina of six-year-old N.R., the daughter of his girlfriend. (PSR ¶¶ 15, 24, 25, 26).

Relevant to Count IV are images of eight-year-old K.H., a neighbor of Herrera. (PSR ¶ 14).  The images depict Herrera manipulating a bathing suit in order to fondle the child's vagina. (PSR ¶ 28).

Count V involves images of unknown children downloaded from the internet. The children are under 12 years of age and the images include depictions of oral and vaginal sex.  (PSR ¶ 31).

Each count was excluded from grouping under USSG § 3D1.2(d), so the probation officer calculated an offense level for each. (PSR ¶ 38).

The base offense level for Count I was 32 under § 2G2.1(a). (PSR ¶ 39).  Four levels were added under § 2G2.1(b)(1)(A) because the child, N.R., was under 12 years of age. (PSR ¶ 40).  Two levels were added under § 2G2.1(b)(2)(A) because images depict a sexual act or sexual contact. (PSR ¶ 41).  Two levels were added under § 2G2.1(b)(5) because the minor, N.R., was in the custody or care of Herrera

(she was the daughter of his girlfriend with whom he resided). (PSR ¶ 42). The total offense level on Count I was 40. (PSR ¶ 46).

Count II (same offense) likewise had a base offense level of 32. (PSR ¶ 47). The level was increased by four because A.H. was under 12 years of age (11 years old). (PSR ¶ 48). The level was increased by two for the depiction of sexual contact (rubbing penis on vagina). (PSR ¶ 49). Another two-level increase was applied due to parental relation (A.H. is Herrera's daughter). (PSR ¶ 50). The total offense level for Count II was 40. (PSR ¶ 54).

Count III (same offense) also started with a base offense level of 32. (PSR ¶ 55). Add four levels for child under 12 years of age (N.R. was 5 years old). (PSR ¶ 56). Add two levels for sexual contact (fondling vagina and digital penetration). (PSR ¶ 57). Add two levels for custody or control (N.R. was the daughter of Herrera's girlfriend). (PSR ¶ 58). The total offense level for Count III was 40. (PSR ¶ 62).

Count IV (same offense) had a base offense level of 32. (PSR ¶ 63). Add four levels for child under 12 (K.H. was eight years of age). (PSR ¶ 64). Add two levels for sexual contact (fondling vagina). (PSR ¶ 65). The total offense level for Count IV was 38. (PSR ¶ 69).

Count V (possession of child pornography) carried a base offense level of 18 pursuant to § 2G2.2(a)(1). (PSR ¶ 70). Add two levels for minors under twelve years of age pursuant to § 2G2.2(b)(2). (PSR ¶ 71). Add four levels, pursuant to § 2G2.2(b)(4)(A), for sadistic, masochistic or violent depictions (oral sex with adults, penetration of vagina by adult). (PSR ¶ 72). Add two levels, pursuant to USSG § 2G2.2(b)(6), for use of a computer. (PSR ¶ 73). Add two levels, pursuant to USSG § 2G2.2(b)(7) for more than 10 but less than 150 images. (PSR ¶ 74). The total offense level for Count V was 28. (PSR ¶ 78).

The multiple count adjustment was based on an offense level of 40 with an increase of four levels for four units. (PSR ¶¶ 79,80,81,82). Add five levels pursuant to § 4B1.5(b)(1) for pattern of activity involving prohibit sexual conduct ("repeat and dangerous sex offenders against minors"). (PSR ¶ 83). The offense level was 49. (PSR ¶ 83).

Herrera's offense level was reduced by two for acceptance of responsibility. (PSR ¶ 84). Reduce level by one for timely acceptance of responsibility. (PSR ¶ 85). The total offense level in excess of 43 was treated as an offense level of 43 pursuant to Chapter 5, Part A (comment n.2). (PSR ¶ 86). The total offense level was, therefore, 43. (PSR ¶ 86).

Herrera had a criminal history score of 1 and a criminal history category of I (owing to a Florida conviction for resisting arrest without violence for the corresponding state charges for the instant offenses). (PSR ¶¶ 91, 144). His advisory guidelines range was 1,680 months in prison. (PSR ¶ 144).

Defense counsel filed a detailed Sentencing Memorandum. (ECF 42). Herrera was 31 years old at the time of sentencing. (ECF 42—p1). Until the present aberrational crime spree, Herrera had no criminal history, and not even an arrest. (ECF 42—p1) ("[H]e has led a productive and responsible life devoid of any criminal conduct.") (PSR ¶ 98) (no previous arrests). His only criminal history point results from a nolo plea in state court to resisting arrest without violence for the present offenses. (ECF 42—p2); (PSR ¶ 89). Herrera is also charged with the same offenses in a Florida court. (PSR ¶¶ 93,94,95,96,97).

Herrera graduated from high school. (ECF 42—p2) (PSR ¶ 128). He obtained a nursing degree in Puerto Rico. (PSR ¶ 128). In the United States, he is a certified medical technician: "Medical Assistant," Phlebotomy Technician," and "Electrocardiogram Technician." (ECF 42—p2) (Exh. B,C,D,E,F,G). He was steadily employed in the medical field, and previously employed in various positions at Rent-A-Center, a home furnishing store, as a security guard in Puerto Rico, and

9

by Teleperformance in Panama City. (ECF 42—p3) (PSR ¶¶ 134,132,133,134, 135, 136,137).

Although never married, he is the father of three daughters ages 12, 5 and 4. (ECF 42—p3). Prior to the instant offenses, there was no suggestion of any impropriety with the girls. (ECF 42—pp3-4).

Herrera had to overcome a troubled childhood. He met his father only once. (PSR ¶ 101). His father was "incarcerated for much of his childhood for drug related charges." (PSR ¶ 103). His mother was absent for extended periods and he stayed with his grandmother. (PSR ¶ 103). His grandmother died when Herrera was 12 years old. (PSR ¶ 103). Herrera assumed much responsibility in the care of his younger siblings as he was the oldest of four children. (PSR ¶¶ 101,103).

Herrera was himself a victim of sexual abuse at the age of nine or ten. (PSR ¶ 117). He was abused sexually and made to perform oral sex on a man who rented space from his grandmother. (ECF 42—p4) (PSR ¶ 117).

Without a father and with his mother frequently absent, Herrera was introduced to marijuana between the ages of 15 and 17 when he occasionally smoked. (PSR ¶ 120). He began drinking alcohol at the age of 18. (PSR ¶ 119). He first used cocaine at the age of 21. (PSR ¶ 121). He reported daily use of alcohol and cocaine in the time period leading up to his arrest. (PSR ¶¶ 119,121). To make

10

matters worse, Herrera reported his first use of methamphetamine was in December of 2019. (PSR ¶ 122).  He said he used "meth" daily and was high on "meth" at the time of his arrest. (PSR ¶ 122).

> Herrera explained that he believes that his methamphetamine use contributed to his conduct in this offense, as he was on "meth" for five months straight at the time this offense occurred.  He described two occasions in which he went for long periods of time (12 days and later, one week) in which he did not sleep at all because of his "meth" use.  He believes the conduct from the instant offense could have occurred during that time.

(PSR ¶ 125).  "But I was at that moment very high on meth and up for—like from February to May I have basically no—don't remember nothing." (ECF 61—pp28-30).

Herrera was first diagnosed with depression and anxiety at age 25 after attempting suicide by overdosing on pain medication. (PSR ¶ 114).  He reported that he was previously diagnosed with bipolar disorder and depression while working at New Wave Medical Clinic in Panama City, Florida. (PSR ¶ 115).  He received treatment for this disorder for approximately one year by Dr. Sekhon while an employee of the clinic. (PSR ¶ 115).

After his arrest on federal charges, Herrera was referred for a forensic evaluation through the Federal Bureau of Prisons.  As a result, he was diagnosed with Amphetamine-Type Substance Abuse Disorder (Severe), Alcohol Use Disorder

11

(Severe), and Other Specified Personality Disorder (Antisocial and Borderline Traits). (ECF 42—p5) (PSR ¶ 118). As reported to the probation officer, Herrera "believes that his methamphetamine use contributed to his conduct in this offense, as he was on "meth" for five months straight at the time this offense occurred." (PSR ¶ 125). He is amenable to drug treatment, and in fact participated in a substance abuse program for a period of time prior to "COVID-19 restrictions." (PSR ¶¶ 124,127).

A risk assessment was performed by Dr. Celeste N. Shuler, Ph.D. (ECF 42—p5). Her assessment found Herrera among those least likely to commit a new offense. (ECF 42—p5). The doctor noted: "[the] incidents that are the basis of this evaluation are not sufficient to suggest that he has any kind of paraphilic condition." (ECF 42—pp 5-6) (Exh. I, p 5). She concluded: "[O]verall, the risk analysis for Mr. Herrera suggests he is at a relatively low risk for sexual recidivism." (ECF 42—p6) (Exh. I, p6).

Mr. Herrera has been under the care of Tamara Bogle, LCSW, Behavioral Health Manager at the Walton County Jail. Ms. Bogle reports that Herrera "presents with significant depressive symptoms." The behaviors for which he was arrested are "inconsistent with his current presentation." In her clinical opinion, such behaviors "are not representative of him." (ECF 42—p6) (Exh. J).

12

The government filed a sentencing memorandum. (ECF 45).  The government asked for a sentence 140 years in prison which reflects consecutive sentences on all five counts. (ECF 45—p3).  The government described the crimes as "appalling." (ECF 45—p4).  The government noted that child sex crimes are among the most despicable of offenses and that courts have upheld lengthy sentences as substantively reasonable, citing *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009); *United States v. Stewart*, 704 F. App'x 855, 857 (11th Cir. 2017) (720 months); *United States v. Castillo*, 427 F. App'x 748, 749 (11th Cir. 2011) (1,560 months).

After considering the factors in 18 U.S.C. § 3553(a), the district court sentenced Herrera to an effective term of 100 years in prison followed by concurrent terms of ten years' supervised release on all counts. (ECF 57—pp21-27). Specifically, the district court stated that it had considered a number of factors that "cut in [Mr. Herrera's] favor." (ECF 57—p22).  These included: (1) lack of a father figure; (2) sexual abuse suffered as a child; (3) serious drug addiction, including methamphetamine; (4) mental health issues; (5) lack of prior criminal history; (6) potential to be a productive, law-abiding citizen if Herrera could overcome his substance abuse problem; (7) educational achievement demonstrating Herrera to be a "very smart, intelligent and capable person."  (ECF 57—pp22-23).

13

On the other hand, the district court stated that the nature and circumstances of the offense hurt Herrera. Child sex crimes are among the most egregious and despicable offenses recognized by society. (ECF 57—p23). Other harmful factors included: (1) familial relationship with a victim, his daughter; (2) the offenses involved physical touching (even though not an element of the offenses of conviction); (3) the crimes occurred over a month-long period; (4) Herrera possessed child pornography on his phone; (5) the possession of child pornography coupled with physical touching and masturbation "strongly suggest that there is some level of proclivity," so "there is a need to protect the public from this happening in the future, even though we didn't see it happening in the past." (ECF 57—pp24-25).

The district court discounted the opinion of Dr. Shuler. Even assuming that Herrera presents a relatively low risk of reoffending in the realm of sex offenders, "that relative risk doesn't give me a great deal of comfort." (ECF 57—p25). The district court specified the factors "driving" the sentence: (1) seriousness of the offenses; (2) the need to protect the public from future offenses; and (3) punishment. (ECF 57—p27).

14

(iv)    <u>Standard of Review</u>

The Court reviews the substantive reasonableness of a sentence for abuse of discretion. *United States v. Kirby*, 938 F.3d 1254, 1257 (11th Cir. 2019) (citing *United States v. Duperval*, 777 F.3d 1324, 1331 (11th Cir. 2015)).  A district court abuses its discretion when it weighs the 3553(a) factors in a manner that "demonstrably yields an unreasonable sentence." *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008).  The Court will reverse if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.*, quoting *United States v. McBride*, 511 F.3d 1293, 1297-98 (11th Cir. 2007)).  A sentence is substantively unreasonable if it does not achieve the purposes of sentencing stated in § 3553(a). *Id.* at 1191.

15

## SUMMARY OF THE ARGUMENT

Mr. Herrara's criminal conduct was clearly abhorrent. But as bad as it was, it was just as clearly explainable—and he is just as clearly amenable to rehabilitation. "He is an intelligent and skilled individual." (PSR ¶ 175). In the latter stages of his 31 years, Herrera had spiraled into a web of drug dependency, anxiety and depression. In an otherwise law abiding life, he engaged in a drug-infused crime spree of little more than a month. During that time, he admits, his behavior was fueled by the rage and delusion of cocaine and methamphetamine. His crime spree may be described as a single extended psychotic episode.

The district court erred in finding Herrera had a "proclivity" to commit child sex offenses. Because of this clear error, the court undervalued Herrera's clear potential for rehabilitation and gave undue emphasis in finding a heightened need to protect the public from future crimes. The district court clearly erred in balancing the § 3553(a) factors.

For his crimes, the district court imposed an effective sentence of 100 years in prison *plus* ten years of supervised release. This sentence was more than "sufficient" and "greater than necessary" to achieve the goals of sentencing. It is substantively unreasonable.

16

Mr. Herrera is not incorrigible. It is possible for him to return to society, at some point, as a reformed and law abiding citizen. The sentence imposed reflects a lock-him-up-and-throw-away-the-key attitude which does not comport with the aims and standards of sentencing under 18 U.S.C. § 3553(a). There is no way Herrera will live to serve the term of 100 years imposed by the district court. And the additional tax of 10 years of supervised release (when the offenses of conviction require only five) reflects a likely measure of spite to add insult to injury because Herrera will not live to serve any supervised release.

For example, a sentence half as long—50 years—would likely result in release at approximately 80 years of age with 10 years of supervised release and is a perfectly sufficient punishment and all the protection that society needs.[1] A longer sentence reflects nothing more than overkill and constitutes an abuse of discretion in sentencing a defendant who showed extreme remorse and entered a timely guilty plea to demonstrate acceptance of responsibility for his extreme crimes.

The sentence imposed is substantively unreasonable. Mr. Herrera requests a remand for resentencing before a different judge.

---

[1] Appellant does not request this specific sentence. This is just an example to show the unreasonableness of the sentence imposed by the district court.

## ARGUMENT

## ISSUE

> Whether the sentence imposed by the district court—100 years in prison followed by 10 years of supervised release—was substantively reasonable?

The sentence imposed in this case was more than "sufficient" to punish Mr. Herrera and more than "necessary" to protect the public. It is substantively unreasonable.

The guidelines advisory sentence in this case was 1,680 months in prison (4 x 360 months = 1,440 months + 240 months = 1,680 months). Because the district court ordered one 360 month sentence to be served concurrently (Count III) and imposed a less than maximum sentence of 120 months on Count V, the district court imposed an effective term of 100 years in prison—480 months below the maximum guidelines sentence (1,680 months – 480 = 1,200 months or 100 years in prison).

The Court reviews the substantive reasonableness of a sentence for abuse of discretion. *United States v. Kirby*, 938 F.3d 1254, 1257 (11th Cir. 2019) (citing *United States v. Duperval*, 777 F.3d 1324, 1331 (11th Cir. 2015)).

> A sentence is substantively unreasonable only if "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."

18

*United States v. Duperval*, 777 F.3d at 1331 (quoting *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc)).

It is often stated that where the trial court imposes a sentence within the guidelines range, the sentence is, presumptively, substantively reasonable. See *Rita v. United States*, 551 U.S. 338, 346-47, 127 S. Ct. 2456, 2462-63 (2007); *see also*, *United States v. Lattimore*, 296 F. App'x 890, 893 (11th Cir. 2008) (unpublished) (citing *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005)).  But this is only a presumption which may be rebutted, and it must be placed in context.

> The Sentencing Guidelines are merely "the starting point and the initial benchmark," *Gall v. United States,* 552 U.S. 38, 49, 128 S.Ct. 586, 596, 169 L.Ed.2d 445 (2007), designed to "assist ... the sentencing judge" in determining a sentence, *United States v. Tichenor,* 683 F.3d 358, 364 (7th Cir. 2012) (quoting *United States v. Brierton,* 165 F.3d 1133, 1139 (7th Cir. 1999)). In the end, a sentencing judge "must make an individualized assessment based on the facts presented" and "may not presume that the Guidelines range is reasonable." *Gall,* 552 U.S. at 50, 128 S.Ct. at 596–97. "The sentencing judge's authority to exercise discretion distinguishes the Guidelines from criminal statutes in a significant and undeniable manner." *Tichenor,* 683 F.3d at 365.

*United States v. Matchett*, 802 F.3d 1185, 1194 (11th Cir. 2015), *cert. denied*, 137 S. Ct. 1344 (2017).

19

A sentence is substantively unreasonable if it does not achieve the purposes of sentencing stated in § 3553(a). *Id.* The "overarching duty" of the sentencing court under § 3553(a) is to impose a sentence that is "sufficient, but not greater than necessary" to serve the purposes of sentencing. *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020) (quoting 18 U.S.C. § 3553(a)). "[A] district court abuses its discretion if it (1) fails to consider relevant factors that were due significant weight, (2) gives an improper or irrelevant factor significant weight, or (3) commits a clear error of judgment by unreasonably balancing the proper factors." *United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020) (citing *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc)).

As stated in *Matchett*, sentencing is an individualized process. The Guidelines sentencing range is not presumed reasonable. Here, the guideline range is not reasonable because *this defendant*, Mr. Herrera, is not one who needs to be incarcerated for life in order to adequately protect the public.

As stated in *Gall*, the sentencing court may not presume the guidelines range is reasonable. Here, the guidelines range is not reasonable. Mr. Herrera is not incorrigible. It is possible for him to return to society, at some point, as a reformed and law abiding citizen. The sentence imposed reflects a lock-him-up-and-throw-away-the-key attitude which does not comport with the aims and standards of

20

sentencing under 18 U.S.C. § 3553(a). There is no way Herrera will live to serve the term of 100 years imposed by the district court. And the additional tax of 10 years of supervised release (when the offenses of conviction require only five) reflects a likely measure of spite to add insult to injury because Herrera will not live to serve any supervised release.

Mr. Herrera has accepted responsibility for his crimes. His acceptance of responsibility is evidenced by his timely plea of guilty with knowledge of his grave exposure in sentencing. (ECF 29; ECF 61—pp13-15,17-18). And at sentencing, Herrera was able to articulate at a level uncommon to criminal defendants a number of critical concepts: regret for his actions; the gravity of his actions; and, understanding the level of emotional distress caused to the victims and their families.

> Your Honor, I want to start saying that I am very sorry for everybody that I have hurt, but the truth is that there is no for express how regretful I really feel. I cannot stop thinking on the emotional distress that I have caused to these children and their family, including my own. I cannot believe how I was capable of such things.
>
> I cannot forgive myself for my actions. For that, I understand, if no one else can. Hate, repugnance, sorrow, and shame are just some of the burden that I know I may share with these children and their family. But the heaviest feeling up in my shoulders is guilt, a burden I will carry for the rest of my life, no matter where I am, conviction with humiliation.

21

Every day I feel hopeless, Your Honor.  Hopeless because I cannot change the past or the incapability to mend my errors, because I cannot fix what I have shattered and because I cannot go back in time and take back all that I have done.  I have attempt (sic) to take my life several times because I feel worthless and horrible.  I just cannot live knowing that the people that I have loved the most in my whole life are part of my victims, and there's nothing I can do to get them back.  Your Honor, I will give anything—my health or my own life—to heal these children.

I understand the gravity of my actions.  For that I know that the process for remission takes time, and sometimes all the time in the world is not enough to forgive.  But I believe that the—that forgiveness is the first step for healing this particular trauma that I have caused these children.  The longer it takes, the longer the trauma.  That is why as a regretful parent, I incite (sic) the parents to impart forgiveness in them before duration and the trauma become irreversible.

(ECF 57—pp6-7).

My only wish and daily pray, Your Honor, is that these children and everybody, everyone that I hurt, find peace and heal from this nightmare that I have caused you all, including myself.  And I would like to say to the parents, victims that I wish you all could believe me when I say that I got no ways to demonstrate how sorry I am, truly.  Thank you, Your Honor.

(ECF 57—p8).

The district court made a clear error in judgment when balancing the § 3553(a)

factors presented in this case.  The court recognized the factors inuring to Herrera's

22

benefit, including: sexual abuse suffered as a child, drug addiction including methamphetamine, mental health issues including anxiety and depression, lack of prior criminal history, potential to become a law abiding citizen if he could overcome substance abuse problems, and educational achievement demonstrating his intelligence and capabilities. The court claimed to balance these positive factors against the negative, including: the severity of child sex offenses (including offenses against his own daughter); the crimes occurred over a month-long period; and, he had child pornography on his phone. The court concluded that the possession of child pornography and physical touching "strongly suggest that there is some level of proclivity" and, therefore, a "need to protect the public" from future crimes "even though we didn't see it happening in the past." (ECF 57—24-25). The court also specified the factors "driving" the sentence: (1) the seriousness of the offenses; (2) the need to protect the public from future offenses, and (3) punishment.

The district court clearly erred in finding Herrera had a "proclivity" to commit child sex crimes because he committed a number of crimes over a month-long period and that the need to protect the public from future crimes was a critical factor "driving" the sentence. In so finding, the district court ignored the reasons why Herrera committed multiple crimes during a month-long period. It appears unchallenged on the record (and even accepted by the district court) that Herrera's

23

crime spree was the product of ongoing battles with drug addiction, depression and anxiety. It was no coincidence that his month-long crime spree occurred at the nadir of his psychological health and the zenith of an extended psychotic episode fueled by the rage and delusion of cocaine and methamphetamine.

To the district court, the number of child sex offenses coupled with the possession of child pornography indicated a "proclivity" to commit child sex crimes which "drove" a heightened need to protect the public from future child crimes. The problem with the district court's conclusion is that it ignores the uncontroverted facts. Herrera had no criminal history prior to his month-long psychotic episode. Specifically, he had no history of child sex offenses prior to April, 2019. And the child pornography found on his phone consisted entirely of content created during his month-long psychotic episode, as indicated in the Statement of Facts supporting his plea agreement. (ECF 31—p3). His phone also contained additional images of child pornography but even those were "downloaded in April 2019," during his psychotic crime spree, as indicated by the Statement of Facts. (ECF 31—p3). The facts of the case do not show a man with a "proclivity" to commit child sex offenses. The facts show a man with no prior criminal history who engaged in a month-long spree of child sex offenses when he was out of control and in the grip of a psychotic

24

episode arising out of depression and anxiety and fueled by cocaine and methamphetamine.

Moreover, the facts show that the district court's "balancing" of factors essentially ignored Herrera's willingness to address—and potential to overcome—his substance abuse and mental health problems. This was not a true balancing of factors as contemplated under § 3553(a). The district court merely chose the negative factors—along with every negative inference to be derived therefrom—and rejected the positive attributes which tended to mitigate the "need to protect the public from future crimes" which drove the sentencing decision.

There may be times when an individual convicted of these crimes is deserving of an effective life sentence. This is not that time. Herrera is not that defendant. Here, the district court "committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Pugh*.

To summarize, the district court clearly erred in the balancing of factors. The court clearly erred in finding Herrera to have a "proclivity" to commit child sex offenses when he does not. He committed no such conduct prior to April of 2019, and his multiple offenses were the product of a single psychotic episode. The finding of "proclivity" led the court to discount Herrera's potential for rehabilitation and

25

overestimate the need to protect the public. The imposition of an effective life sentence was more than sufficient and greater than necessary to protect the public. The imposition of an effective sentence of life in prison was substantively unreasonable.

## CONCLUSION

Based upon the arguments and authorities presented above, Appellant requests that the Court reverse the sentence imposed and remand for resentencing by a different judge.

<div style="margin-left:40%">

Respectfully submitted,
**RANDOLPH P. MURRELL**
Federal Public Defender

*s/Richard M. Summa*
**RICHARD M. SUMMA**
Assistant Federal Public Defender
Florida Bar No. 890588
227 N. Bronough Street, Suite 4200
Tallahassee, Florida 32301
Telephone: (850) 942-8818
FAX: (850) 942-8809
Attorney for Appellant

</div>

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[**X**] this brief contains 5,467 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ] this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[**X**] this brief has been prepared in a proportionally spaced typeface using WordPerfect X6 in Times New Roman, 14 point, or

[ ] this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

*s/Richard M. Summa*_____
**RICHARD M. SUMMA**
Assistant Federal Public Defender
Attorney for Appellant

27

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been furnished electronically in Acrobat format by Internet upload to this Court and to Assistant United States Attorney Robert G. Davies, 21 East Garden Street, Suite 400, Pensacola, FL 32502 and by U.S. Mail to Joaquin Herrera c/o Bay County Jail, 5700 Star Lane, Panama City, FL 32404, all on this 1st day of June, 2021.

*s/Richard M. Summa*
**RICHARD M. SUMMA**
Assistant Federal Public Defender

28